UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

TAMARA SUE MCCUMBER

    Plaintiff,

    v.        Case No. 2:17-cv-222-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Tamara Sue McCumber seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on July 27, 2013. (R. at 199.) Her date last insured ("DLI") is September 30, 2017. (R. at 206.) Plaintiff previously worked as a receptionist, but has not engaged in substantial gainful activity since 2013. (R. at 17, 41.) After two hearings, the Administrative Law Judge ("ALJ") found that Plaintiff suffered from severe physical and mental impairments. (R. at 17.) However, the ALJ concluded that she could perform jobs that existed in significant numbers. (R. at 25.) Therefore, the ALJ denied her benefits. (R. at 27.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

**B.    Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## C.  Disability Standard

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## D.  Analysis

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, she argues that the ALJ: 1) misweighed several medical opinions, 2) improperly held her part-time work against her, and 3) assigned her jobs that she could not perform.

**(1) The ALJ Must Reweigh Dr. Pallone's Opinions**

Dr. Pallone, a treating physician, provided two opinions assigning Plaintiff disabling limitations. (R. at 442, 445). The ALJ afforded these opinions "little weight." (R. at 23.) An ALJ must afford a treating physician's opinion controlling weight unless the record lacks supporting medical findings or if it is inconsistent with "substantial evidence." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If it is not entitled to controlling weight, an ALJ must weigh the opinion using factors such as "the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* (internal citations omitted). Although an ALJ need only "minimally articulate" his reasons for discounting a medical opinion, *Id.* at 416, he must provide "specific, legitimate reasons constituting good cause" before rejecting the opinion. *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995).

Plaintiff begins by arguing that Dr. Pallone, as "the only neurologist on the record," deserves far more credit. (Pl.'s Br. at 17.) The Seventh Circuit has endorsed the "sole specialist" logic in the past. *See Eakin v. Astrue*, 432 Fed. Appx. 607, 612 (7th Cir. 2016). There, the factors overwhelmingly favored adopting the doctor's opinion. But when the factors go the other way, the sole-specialist designation cannot save the opinion. *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). The record here is conflicting, so this Court normally would be inclined to defer to the ALJ. However, the ALJ also curiously asserted that the doctor "admitt[ed] to very few visits with [Plaintiff] over the last two-year period." (R. at 23.) This statement is ambiguous. If the ALJ meant that Plaintiff was admitted to Dr. Pallone's office very few times, then the ALJ should

have elaborated, because a doctor can still develop an "ongoing treatment relationship" with a patient after only "a few [visits] or . . . after long intervals (e.g., twice a year)." 20 C.F.R. § 404.1527(a)(2). If, however, the ALJ meant that Dr. Pallone admitted that she had only seen Plaintiff very few times, then the ALJ was simply incorrect. Because an ALJ cannot base his decision on "serious factual mistakes or omissions," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014), this Court must remand so the ALJ can explain this statement. The ALJ must also reconsider his statement that "no treating or examining doctor assigned medical restrictions or functional limitations that would preclude employment." (R. at 25.)

**(2)    The ALJ Must Reconsider Plaintiff's Work History**

Despite alleging that she became disabled in July 2013, Plaintiff continued to sporadically work part-time jobs. (R. at 207.) The ALJ seized on this "ability to engage in work activities while simultaneously alleging disability" as evidence that Plaintiff is employable. (R. at 24.) Part-time work, however, provides scant support that one can work full time. *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014). Furthermore, Plaintiff testified that she could not even work those jobs. She could not handle a housekeeping job and lost it after three weeks. (R. at 62.) This implies that, even though Plaintiff can apparently "maintain[] all aspects of daily living without difficulty," she could not do so in a work setting where she is "held to a minimum standard of performance." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012). Additionally, she testified that she had been fired from other jobs because she could not maintain a competitive pace, which supports the marked concentration limitations that Dr. Pallone found. (R. at 47.) The ALJ failed to confront this evidence.

Moreover, the record suggests that Plaintiff worked those jobs out of desperation. She

indicated that she worked "as a necessity to care for [her] daughter." (R. at 283.) Elsewhere, she wrote that she has her "daughter to think about [and] bills to pay" and that she "had to work some [to] keep food on the table." (R. at 305.) The Seventh Circuit generally does not penalize efforts to "maintain some minimal level of financial stability." *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013); *Johnson v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 114895, *11–13 (N.D. Ind., Jul. 11, 2018) ("Johnson[] testi[fied] . . . that limited finances forced her to begin working [part-time] in the first place"). The ALJ must take this into consideration on remand.

### (3) Ms. Ann van Dyk's Findings

Ms. van Dyk, a nurse practitioner, opined that Plaintiff was "unable to sustain employment." (R. at 445.) Although Plaintiff concedes that this is not technically a medical opinion, she cites to several cases holding that the ALJ cannot simply ignore such a statement, starting with *Bjornson*, 671 F.3d at 647. There, the ALJ discounted the opinion and its findings because the doctor intruded on the Agency's turf by saying that the plaintiff could not work. *Id*. The ALJ in *Garcia v. Colvin* committed the same error. 741 F.3d 758, 760 (7th Cir. 2013). In *Roddy*, the ALJ paid little attention to the findings that accompanied the opinion. 705 F.3d at 636. The ALJ in *Kane v. Colvin* "addressed" the opinion by assigning Plaintiff an arbitrary limitation that had no logical connection with the doctor's findings. 2014 U.S. Dist. LEXIS 137052, *18 (N.D. Ind., Sept. 29, 2014). And in *Kemp v. Colvin*, the ALJ did not appear to even address the opinion. 2013 U.S. Dist. LEXIS 139123, *14–15 (N.D. Ind., Sept. 27, 2013). The same goes for *Brown v. Colvin*, 2017 U.S. Dist. LEXIS 5802, *5 (N.D. Ind., Jan. 13, 2017).

None of those errors occurred here. Instead, the ALJ addressed the opinion, discussed the findings that Ms. van Dyk provided, and discounted them by pointing to conflicting evidence.

(R. at 22.) At the same time, however, the ALJ incorporated those limitations into Plaintiff's RFC anyway. (R. at 19.) Thus, this situation is distinguishable from the cases that Plaintiff cites.

**(4)        The ALJ Properly Weighed the Agency Psychologists' Opinions**

Plaintiff challenges the "great weight" that the ALJ assigned to the Agency psychologists' opinions. She points to a specific statement that purportedly shows that the psychologists did not review the record: "There is no indication that there is medical or other opinion evidence." (R. at 112.) Then, Plaintiff cites six medical opinions that the psychologists allegedly ignored. (Pl.'s Br. at 12–13.) But the statement appears in a section entitled "Assessment of Policy Issues" and does not seem to apply to the entire report. (R. at 112.) Moreover, a quick glance at the "Evidence of Record" section reveals that the psychologists considered the opinions that Plaintiff cited. (R. at 119–22.) Lastly, the psychologists referenced several findings within those opinions, confirming that they did, in fact, consider them. (R. at 114.)

Next, Plaintiff challenges the ALJ's assertion that her "moderate limitations in [mental abilities] are well documented." (R. at 24.) But the ALJ is correct. For instance, Dr. Pallone regularly observed intact memory and normal speech patterns. (R. at 21, 320, 328, 441). Dr. Fanelli, another treating physician, made the same observations multiple times, (R. at 22, 375, 391, 408), as did Dr. Nordstrom, a consultative examiner who assigned Plaintiff a Global Assessment of Functioning score of 52, indicating moderate limitations. (R. at 22, 434–37.) Plaintiff identifies a litany of contrary findings, but, at best, this creates a situation in which "conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits." *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). This Court must

defer to the ALJ in such a scenario. *Beardsley*, 758 F.3d at 837.

**(5)    The ALJ Properly Weighed Dr. Briggs' Letter**

Plaintiff also challenges the "little weight" that the ALJ afforded to Dr. Briggs' opinion. (R. at 22.) But this is merely letter in which the doctor simply noted that Plaintiff was "distraught and very anxious." (R. at 425.) It is not a medical opinion because it is not a "judgment about the nature and severity of [Plaintiff's] impairments." 20 C.F.R. § 404.1527(c). Rather, it is the impairment itself. Still, the ALJ weighed it and even incorporated the anxiety by limiting Plaintiff's contact with others. (R. at 19.) This is appropriate because Plaintiff testified that her anxiety comes from being in crowds. (R. at 42.) Additionally, even if the letter were a medical opinion, any error in weighing it can be harmless when the ALJ adopts the opined limitations anyway. *Simms v. Astrue*, 599 F. Supp. 2d 988, 1001 (N.D. Ind. 2009). Thus, to the extent that the ALJ even erred, it was harmless error.

**(6)    The ALJ Properly Evaluated Dr. Fanelli's Findings**

Plaintiff argues that the ALJ improperly dismissed multiple findings of Dr. Fanelli that show the extent of Plaintiff's mental issues. (Pl.'s Br. at 16.) For instance, the doctor noted that Plaintiff "continues to struggle with anxiety and OCD" and that the "intensity of her OCD anxiety is substantial." (R. at 391, 408.) In those same visits, however, Plaintiff demonstrated normal affect, speech, and thought, as well as intact attention, concentration, memory, and judgment. *Id*. The ALJ considered this conflict and chose to believe the objective findings. (R. at 22–23.) This was proper. *Bailey v. Colvin*, 2015 U.S. Dist. LEXIS 87703, *12 (N.D. Ind., Jul. 7, 2015) (affirming where the ALJ discounted a medical opinion by citing findings of "appropriate behavior with a normal affect"). Thus, the ALJ did not err here.

### E. Conclusion

The ALJ improperly 1) addressed the length of Dr. Pallone's treatment relationship with Plaintiff, and 2) held Plaintiff's part-time work against her. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on September 4, 2018.

 S/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE